IN THE MATTER OF JEWEL McWHIRTER DAGGETT, Widow, and DAVID LEIGH DAGGETT, Minor Son, Dependents of LESTER DAGGETT, Deceased, v. KANSAS CITY STRUCTURAL STEEL COMPANY, a Corporation, and GLOBE INDEMNITY COMPANY, a Corporation, Appellants.—65 S. W. (2d) 1036.

Division One, December 6, 1933.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, John N. Monteith* and *Dean Wood* for appellants.

*Watson, Ess, Groner, Barnett & Whittaker* for respondents.

FRANK, P. J.—Appeal from an order of the Circuit Court of Jackson County affirming an award of the Workmen's Compensation Commission. The award was in favor of Jewell McWhirter Daggett and David Leigh Daggett, widow and minor son of Lester Daggett, deceased. Daggett was in the employ of the Kansas City Structural Steel Company as a structural iron worker. He was killed in the course of his employment while assisting in the construction of what is known as the Tenth Street Viaduct in Kansas City, Kansas.

We adopt, in the main, respondents' statement of the facts. With some corrections and additions, the statement reads as follows:

The facts respecting the making of the contract of employment were presented to the commission by the testimony of various witnesses produced by respondents. Certain other facts were admitted by the parties. The appellants offered no evidence.

The record shows that Daggett was killed in the course of his employment as a structural iron worker for the Kansas City Structural Steel Company while erecting a bridge in Kansas City, Kansas. He had been working for about twelve days prior to the accident which caused his death. His employment began on September 18, 1931, and the accident occurred on September 30, 1931. The subject of wages and working conditions never entered into any of the negotiations leading to Daggett's employment, as those subjects were covered by the regulations of the trade union of which Daggett was a member at the time of his employment. He was being paid the regular union scale of $11 per day.

Daggett came to Kansas City about September 15, 1931, in the company of Hugh E. Whitman, a fellow worker. He and Whitman resided at Denver, Colorado. When they arrived in Kansas City they went to the New Oxford Hotel at 1222 Locust Street in Kansas City, Missouri, and there resided until Daggett's death.

After arriving they entered upon a search for employment, and in the course of that search were joined by Charles Baxter, another

steel worker, who had lived in Kansas City, Missouri, for several months. After making inquiries at places on the Missouri side, the three men crossed the State Line and entered the State of Kansas for the purpose of seeking employment by the Kansas City Structural Steel Company, which was then engaged in building what is known as the Tenth Street Viaduct in Kansas City, Kansas. There they consulted with Mr. Thomas, the foreman of the steel company, on the 16th of September. Thomas told the men that he could use them if he got certain steel which had been promised for the first of the coming week, but that the steel had been promised so many times he did not know whether they were going to get it or not. He also told them if they were not doing anything they might come around. After this talk, Daggett and Whitman returned to their hotel in Kansas City, Missouri.

Two days later, on September 18th, Whitman received a telephone call at the Oxford Hotel in Kansas City, Missouri, telling him to report at the Tenth Street Viaduct and go to work. He said, "All right," and hung up the telephone. Nothing was said in that conversation about employing Daggett, but Whitman suggested that Daggett should dress for work and go with him to the scene of the operations, in the hope that he might then obtain employment.

At about the same time some person, presumably Thomas, called Baxter and held a conversation with Baxter's wife. Mrs. Baxter talked from her telephone at 1244 Washington, in Kansas City, Missouri. Thomas in that conversation requested Baxter to get Whitman and Daggett and all three of them report at the Tenth Street viaduct and go to work. Mrs. Baxter reported that conversation to her husband, and Baxter immediately went to the Oxford Hotel and there saw Whitman and Daggett, telling them the substance of the conversation. Daggett inquired whether or not Thomas had sent for him also, and upon an affirmative reply answered, "All right, fine." The three men then went to the Tenth Street Viaduct and reported for duty.

When they arrived at the work the only conversation they had with Thomas was an inquiry by Thomas concerning their whereabouts on the previous day.

Objections to the hearsay character of the testimony concerning the conversation between Mrs. Baxter and Thomas were withdrawn by counsel for the appellants.

It was admitted that the Kansas City Structural Steel Company was a major employer, operating under the Workmen's Compensation Act of Missouri, and that the Globe Indemnity Company was its insurer. It was also admitted that Daggett was fatally injured by an accident arising out of and in the course of his employment.

Upon this evidence and the admissions contained in the record the commission entered findings of fact specifically finding that the contract of employment between Daggett and the steel company. was made in Missouri and that the Missouri Commission had jurisdiction to hear the claim, and awarded compensation to the heirs of Daggett in the sum of $8,610.

██ Appellants' first contention is that the Workmen's Compensation Commission of Missouri was without jurisdiction because the contract of employment was made in Kansas, and the injury causing Daggett's death occurred in Kansas.

The first conversation relative to employment occurred between Daggett, Whitman and Baxter on one side, and Thomas, foreman of the steel company, on the other. This conversation was had on September 16, 1931, at the Tenth Street Viaduct in Kansas City, Kansas. Thomas told these men he could use them if he could get the steel he had ordered but he did not know whether he was going to get it or not. Without doubt no contract of employment was made by this conversation on September 16. After this conversation the three men returned to Kansas City, Missouri; Daggett and Whitman to their hotel and Baxter to his home. Two days later, on September 18, Thomas called Whitman over the telephone at his hotel and told him to "go over to the Tenth Street Viaduct and go to work." Nothing was said in this conversation about Daggett going to work. It is, therefore, clear that Daggett's contract of employment was not made by Thomas' telephone conversation with Whitman. Although nothing was said in this telephone conversation about Daggett going to work, he decided to go with Whitman to the place of work in the hope that he might get employment after he got there. Whitman testified that as they left the hotel to start to the place of work, they met Baxter who said to them, "Get in the car, . . . just had a call from the Structural Steel to bring you fellows over to go to work." Daggett then inquired of Baxter whether or not Thomas had sent for him also, and when Baxter told him that he had, Daggett said, "All right, fine," and got in the car and went with Baxter to the Tenth Street Viaduct and went to work. No conversation was had about employment or a contract of employment after they arrived at the place of work. When Thomas called Baxter's home in Kansas City, Missouri, he talked with Baxter's wife and instructed her to tell Baxter to get Daggett and Whitman and come to the Tenth Street Viaduct and go to work.

If, instead of calling Baxter's home, Thomas had gone from Kansas City, Kansas, to Kansas City, Missouri, and there requested Daggett to go to work and Daggett had there accepted the proposition by saying, "all right, fine," and by then and there immediately starting

with Thomas to the place of work, without doubt the contract of employment would then have been made in Missouri. The fact that Thomas called Baxter and had Baxter do for him what he could, and no doubt would have done himself, had he been in Kansas City, Missouri, where Daggett was, does not change the situation. Thomas' direction to Baxter constituted Baxter the agent of the steel company to offer Daggett employment. When the offer was made by Baxter, Daggett accepted it by both words and acts. He said, "All right, fine," got in the car with Baxter and Whitman and went to the place of work.

It is settled law that the place where the final act occurs which makes a binding contract is the place of contract. Appellants' contention in the case at bar is that Daggett's act in beginning work in the State of Kansas was the final act which completed the contract of employment and for that reason it was a Kansas contract. This insistence is based upon appellants' claim that where an offer calls for the performance of an act, the doing of the act is necessary to complete the contract. We do not agree with appellants' statement of the law. Of course, if an offer calls for the performance of an act, and further provides either expressly or by necessary implication, that acceptance shall be made by performance of the act, then the acceptance must be in the manner indicated in the offer. But where an offer calls for the performance of an act, and does not provide the manner of acceptance, we know of no reason why the other party could not accept the offer and thus complete the contract by either performing the act called for in the offer, or by agreeing to perform it. The distinction between an offer which calls for a promise, and one which calls for the performance of an act, is that in the former, notice of acceptance is always essential, while in the latter such notice is not required if the act called for in the offer is performed, because performance of the act is an acceptance. [Leesley Bros. v. Fruit Company, 162 Mo. App. 195, 208; Williams v. Emmerson-Brantingham Implement Co., 198 S. W. 425, 427.] However, a holding that notice of acceptance is not essential where the act called for in the offer is performed, is not a holding that the offer could not be accepted by agreeing to perform the act called for in the offer. In 35 Cyc. 55, the law is stated thus:

"An order for goods to be shipped or delivered to the buyer becomes an agreement when the goods are shipped or delivered according to the terms of the order without communication of the acceptance. But until the goods are shipped or delivered, there is no acceptance unless *acceptance be communicated*." (Italics ours.)

The law on the question under consideration was stated by this court in Botkin v. McIntyre, 81 Mo. 559, 560, as follows:

"Many things might have been done by plaintiff which would indicate to the trier of the fact his assent. There can be no contract without the assent of the parties thereto. . . . But this assent may be indicated in various ways. The court cannot say what facts, or words, or actions indicate the agreement between parties. Each case must be governed by the facts and circumstances developed, and by which the triers of the fact must be led to the truth."

In the instant case, Baxter, at the request of the steel company went to the hotel in Kansas City, Missouri, where Daggett was stopping and there offered him employment. Daggett then and there accepted the offer and went with Baxter to the place of work in Kansas City, Kansas. It cannot be said that Baxter was a mere messenger to communicate the offer of employment to Daggett with no authority to receive Daggett's acceptance of the offer. There was evidence that Baxter told Daggett and Whitman that he was instructed "to bring you fellows over to go to work." Baxter could not have taken them to the place of work unless they had accepted the offer of employment and agreed to go. He was, therefore, clothed with authority to receive their acceptance of the offer and thus complete the contract of employment. The offer of employment and its acceptance both being made in Missouri the contract of employment was a Missouri contract.

In support of the contention that the contract of employment was made in Kansas, appellants cite Fullington v. Ozark Poultry Supply Co., 327 Mo. 1167, 39 S. W. (2d) 780; Williams v. Emerson-Brantingham Implement Co., 198 S. W. 425; Morris v. Donovan, 159 Mo. App. 401, 141 S. W. 428; Sabella v. Brazileiro, 91 Atl. 1032; In re Spencer Kellogg & Sons, 52 Fed. (2d) 129; Mitchell v. St. Louis Smelting & Refining Co., 202 Mo. App. 251, 215 S. W. 506.

We will notice above cases in the order cited. The Fullerton case neither discusses nor decides any question similar to the one at issue in the case at bar. The Williams case was an action for damages because of defendants' failure to comply with an alleged contract of sale, whereby defendant sold and agreed to deliver to plaintiff at Thayer, Missouri, a certain threshing machine and engine with appurtenances. The part of the opinion relied on by appellants reads as follows:

"That there can be no contract without both an offer and acceptance is fundamental. . . . The acceptance may be by *word* or *act*, but there must be an acceptance. Notice of acceptance is not always necessary, and when necessary may be waived. We concede that where the offer is to have the other party *do* something for the offered consideration, as distinguished from *promising* to do something, then the doing of such thing by the other party is an acceptance,

and no notice by the offeree of the intention to do the thing called for is necessary."

As we interpret the opinion in the Williams case, it holds directly contrary to appellants' contention. While the opinion holds, and correctly so, that the doing of the act called for by an offer, is an acceptance of the offer, it does not hold that such an offer could not be accepted in any other manner. In fact it holds the contrary. The opinion says, "The acceptance may be by word or act."

The Morris case is not in point here. It neither discusses nor determines where the contract of employment involved in that case was made.

In the Sabella case it was shown that deceased was a longshoreman and had frequently been employed by prosecutor to assist in loading and unloading its ships; that prosecutor's foreman told deceased in Brooklyn, New York, to go to Jersey City, as they had a ship in dock, and deceased went there, was set to work, and within two hours the accident happened which caused his death. The New Jersey Supreme Court held that the contract of employment was entered into when deceased was put to work in Jersey City and not until then. The case is clearly distinguishable from the case at bar. It was not shown that Sabella accepted the offer in Brooklyn, New York, before going to Jersey City.

It does not appear from the opinion that Sabella communicated to prosecutor's agent, either by word or act, that he intended to go to Jersey City for the purpose of going to work, or that the prosecutor's foreman knew that he intended to go, or did go to Jersey City. There can be no contract without both an offer and an acceptance. An uncommunicated intention to accept an offer, is not an acceptance. Where notice of acceptance is not given to the party making the offer, or to his authorized agent, there is no acceptance until the act called for in the offer is performed. [Williams v. Emerson-Brantingham Implement Co., 198 S. W. 425, and cases cited.]

The next case cited by appellants is In re Spencer Kellogg & Sons, Inc., 52 Fed. (2d) 129. Spencer Kellogg & Sons, Inc., was a New York Corporation engaged in the manufacture of linseed oil, with its principal place of business in Buffalo. It had a number of factories at other places, among which was one at Edgewater, New Jersey, on the west shore of the Hudson River opposite Ninety-sixth Street, Manhattan. It maintained a motor boat in which it carried workmen across the river from Manhattan to Edgewater, New Jersey. Certain persons appeared on Saturday looking for work as stevedores to discharge a ship expected that day, which did not dock until Sunday. These persons were told to report back on Monday. They were given cards in evidence of the fact that they had already applied,

which would entitle them to preference when jobs were assigned. They reported back on Monday and while being carried by defendant across the river from Manhattan to Edgewater, New Jersey, the boat struck floating ice which caused it to sink and many of the passengers were injured and others were drowned. Some of those injured and the administrators of some of those drowned brought suits against the company in the New York courts. The company contended that these persons were already in its employ and equally subject to the Compensation Act as its regular employees. In denying the contention there made, that court said:

"That no such contract was made with these men on Saturday is too plain for debate. They were then assured of no work, of only a preference among those who might apply; at most any 'contract of hiring' was conditional upon jobs, still unfilled, when they appeared."

The facts in the case at bar are the exact opposite of the facts in the cited case. In the instant case, Baxter, defendants' agent, called on Daggett at his hotel in Kansas City, Missouri, and made him an unconditional offer of employment which Daggett then and there accepted before going to the place of work in Kansas City, Kansas.

The last case cited by appellant on this question is Mitchell v. St. Louis Smelting & Refining Co., 202 Mo. App. 251, 215 S. W. 506. In that case an agent of defendant, a corporation operating in the State of Illinois, approached plaintiff and others, residents of the city of St. Louis, Missouri, and offered them employment at defendant's plant in the State of Illinois and offered to convey them to defendant's plant if they desired to go. Plaintiff and the other parties agreed to go, whereupon defendant's agent took them from St. Louis, Missouri, to defendant's plant near Collinsville, Illinois, where they went to work. Later while so working plaintiff was injured and brought an action against defendant to recover damages for his injuries. In deciding what law should determine defendant's liability, the St. Louis Court of Appeals, said:

"Granting for argument, but not deciding, that the contract of employment was made in this State, beyond question it was for work to be done in the State of Illinois, and the accident, which is the real cause of action, occurred in that State and the liability for it is to be determined by the laws of the State of Illinois."

The facts giving rise to the cause of action in the case last cited occurred prior to the enactment of our Compensation Act. The contract of employment there involved did not provide what law should govern the liability of defendant for injuries received by plaintiff while in the course of his employment. In that situation the court properly applied the law of the place where the injury occurred and the cause of action accrued.

■ Appellants contend that if it should be conceded that the contract of employment was made in Missouri, still the employment would not be within the purpose and meaning of the Missouri Workmen's Compensation Act, because the making of the contract in Missouri, standing alone, would not be sufficient to bring the case within the act.

There would be merit in this contention if the making of the contract of employment was the only thing that occurred in Missouri, but such is not the case. The record shows that the steel company admitted that it was a major employer operating under the Missouri Workmen's Compensation Act. This being true, it was subject to all provisions of the act. The act (Sec. 3310, R. S. 1929) provides that the Workmen's Compensation Act shall apply to all injuries received outside of this State under contract of employment made in this State unless the contract of employment in any case shall otherwise provide. This section of the Compensation Act has been construed by our court en banc in the case of State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 8 S. W. (2d) 897. In that case the claimant was employed in Missouri as a traveling salesman to travel in Missouri, Kansas and Oklahoma. While traveling in Oklahoma, he received an injury due to slipping upon ice on a public street in Bartlesville, Oklahoma.

He sought compensation under the Workmen's Compensation Act of Missouri. Contention was made that the Missouri Commission had no jurisdiction because the accident causing the injury occurred in Oklahoma. In disposing of that contention our court en banc said:

"Relator contends that the provision, to the extent that it relates to injuries received outside of this State, is void. The main ground urged in support of the contention is that 'the legislative power cannot be exercised to control a cause of action arising beyond the boundaries of the State.' A brief examination of the nature of relator's obligation to its employee will disclose the inapplicability of the principle invoked. The Workmen's Compensation Act of this State is elective. The acceptance of its provisions is entirely optional with both employer and employee. When accepted by them it enters into and becomes an integral part of the contract of employment. The act was adopted after the employment of Amick by relator; but as both accepted it, as must be assumed from the record here, it immediately became a part of, and to the extent of all its terms and provisions supplemented, the contract of employment existing between them. Such contract was made in this State, and, with respect to the payment and the acceptance of compensation for injury in case of accident—wherever it occurred—was to be performed in this State; consequently all questions relating to its construction and

the legal obligations arising from it are to be determined according to the laws of this State. By its terms relator agreed to pay, and Amick, the employee, agreed to accept, compensation in case of accident in accordance with the provisions of the act. These mutual promises are binding upon the parties and enforceable in any jurisdiction the same as any other contract.

"The cause of action alluded to by relator accrued, not from the commission of a tort in Oklahoma, but through the breach of a contractual obligation which was entered into in Missouri and which was to be performed in this State. The breach consisted of relator's refusal to pay the stipulated compensation."

The appellant steel company, being a major employer under the Missouri Compensation Act, every provision of that act became an integral part of every contract of employment made by the steel company in Missouri. It therefore follows that by the terms of the contract of employment entered into between the steel company and Daggett, the steel company agreed to pay and Daggett agreed to accept, compensation in case of injury, wherever it occurred, in accordance with the provisions of the Missouri Workmen's Compensation Act. This is so because the Compensation Act, which is a part of the contract so provides. The act is not compulsory. The steel company voluntarily accepted the act and made the contract of employment in accordance therewith. We see no reason why a lawful contract voluntarily entered into should not be enforced. [Smith v. Van Noy Interstate Co. (Tenn.), 262 S. W. 1048, 35 A. L. R. 1409.]

No useful purpose would be served in discussing the cases which appellants cite from other jurisdictions, for the reason that the provisions of the Compensation Acts construed in these cases are materially different from the provisions of the Missouri Act.

■ It is next contended that to hold the Missouri Workmen's Compensation Act applicable to this case is to give the act a construction which renders it unconstitutional within the meaning of the full faith and credit clause and the due process clause of the United States Constitution.

The principal authority relied upon to support this contention is Bradford Electric Co. v. Clapper, 286 U. S. 145, 52 Sup. Ct. 571. In that case the contract of employment was made in Vermont and the injury occurred in New Hampshire. The Vermont Act, like that of Missouri, contained the following provision:

"Employers who hire workmen within this state to work outside of the state, may agree with such workmen that the remedies under the provisions of this chapter shall be exclusive as regards injuries received outside this state by accident arising out of and in the course

of such employment, and all contracts of hiring in this state shall be presumed to include such an agreement.''

The court held in the cited case that the right to recover compensation was controlled by the Compensation Act of Vermont, the place where the contract was made. In so holding that court said:

''The mere recognition by the courts of one state that parties by their conduct have subjected themselves to certain obligations arising under the law of another state is not to be deemed an extraterritorial application of the law of the state creating the obligation.''

The cited case not only does not support appellants' contention, but it holds exactly contrary. However, appellants contend that the cited case supports their contention that one state cannot seize upon some act casually occurring within its jurisdiction as a means for the forced application of its own Compensation Law, in denial of the lawful application of the Compensation Law of another state where all the permanent, intended and important elements of the employment are located.

We have no fault to find with this latter contention, but such is not the situation in the case at bar. The making of the contract of employment was not the only thing that occurred in Missouri. It was admitted that defendant was a major employee operating under the Missouri Workmen's Compensation Act. In that situation, that fact that defendant was working on a job across the line in Kansas at the time the contract of employment was made in Missouri, does not render the making of such contract in Missouri merely casual.

The facts found by the commission were either admitted or supported by uncontradicted testimony, and were sufficient to support the award made by the commission. The action of the circuit court in approving the award should be affirmed. It is so ordered. All concur.