HOWARD L. JOHNSON (Deceased), Employee, ORPHA T. JOHNSON, Dependent, Appellant, v. GREAT LAKES PIPE LINE COMPANY, Employer, and' HARTFORD ACCIDENT AND INDEMNITY COMPANY, Insurer, Respondents.—No. 40805.—215 S. W. (2d) 460.

Division One, December 13, 1948.

446

*R. C. Southall* and *R. J. Southall,* for appellant.

*Leo T. Schwartz* for respondents; *John A. McGuire* of counsel.

[460] VAN OSDOL, C.—Appeal from a judgment of the Circuit Court affirming an award denying compensation in a proceeding under the Workmen's Compensation Law. The claim was made by the widow-dependent for benefits of $10,380 for the death of the employee, Howard L. Johnson.

Commission found "from the evidence that the contract of employment between the employer and employee herein was entered into in the State of Kansas and that the alleged accident, series of accidents, or occupational disease occurred in the State of Kansas. This Commission, therefore, [461] has no jurisdiction in the premises and compensation must be and is hereby denied."

The only question presented upon this appeal is the jurisdiction of the Commission to determine the claim.

It is provided by Section 3700 R. S. 1939, Mo. R. S. A. § 3700, that ". . . (b) This chapter (Chapter 29, Workmen's Compensation Law) shall apply to all injuries received in this state, regardless of where the contract of employment was made, and also to all injuries received outside of this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide."

Where the employer is a major employer operating under the Missouri Workmen's Compensation Law, the Law is applicable to all injuries received outside of this state and under contract of employment made in this state (unless the contract otherwise provides).

Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. 2d 75; Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S. W. 2d 1036; Toon v. David G. Evans Coffee Co., Mo. App., 103 S. W. 2d 533. See also Loudenslager v. Gorum, 355 Mo. 181, 195 S. W. 2d 498. The general test of where, as a fact, the contract of employment is entered into and the relation of employer and employee is created is the intention of the parties as evidenced by their acts and conduct, the nature of the business, the situation of the parties, and all the facts and circumstances. Rendleman v. East Texas Motor Freight Lines, 355 Mo. 287, 196 S. W. 2d 171; Overcash v. Yellow Transit Co., 352 Mo. 993, 180 S. W. 2d 678; Deister v. Thompson, 352 Mo. 871, 180 S. W. 2d 15; Kelsall v. Riss & Co., Mo. App., 165 S. W. 2d 329. And it has been said the place where the contract of employment is made and the relation of the employer and employment established or created is the place where the final act occurs which makes a binding contract. Overcash v. Yellow Transit Co., supra; Deister v. Thompson, supra; Adams v. Continental Life Ins. Co., supra; Daggett v. Kansas City Structural Steel Co., supra. See also Rendleman v. East Texas Motor Freight Lines, supra.

It is appellant-claimant's contention that, although Claimant's decedent suffered death from injury received by accident, series of accidents, or occupational disease in Kansas, the final act (the "approval" of the contract) completing the contract of employment had occurred in Missouri; and, since Employer was admittedly operating under the Missouri Workmen's Compensation Law, the Commission's finding and final award denying compensation and the Circuit Court's judgment affirming the award were erroneous.

Employer-respondent, Great Lakes Pipe Line Company, had its general office in the Bryant Building, Kansas City, Missouri. Employer's president, Harry M. Moreland; and its vice-president, general superintendent and personnel manager, E. H. Skinner, were stationed at Employer's general office. Employer maintained district "field" or operating offices in other states, including a district office for its Fairfax district in Kansas City, Kansas. From its general office in Missouri, Employer supervised the operations of its lines passing through Kansas and Missouri, and other states. All original records pertaining to employees were kept in the general office. Payroll data and records of employees' "time off" were there kept; and Social Security taxes were paid, and employees' income was withheld for income tax purposes through and at its general office.

Employer's Fairfax district office was in the charge of a district superintendent. A "terminal" of Employer's line was also located in Kansas City, Kansas, the terminal being in the charge of a terminal superintendent. When Employee, Howard L. Johnson, was employed, Employer's district superintendent was Noble L. Linch. Linch testified Employee made application personally at the Fairfax

district office in Kansas. It seems Linch put Employee on temporary work as a laborer August 1, 1933; and, subject to physical examination, Employee was "transferred" to permanent employment August 16th. He was permanently employed as a gauger. He continued his residence in Kansas City, Missouri, and continued to work in the Fairfax district [462] (in Kansas) until his death, July 13th or 18th, 1946.

Two "Employment Rate Change Transfer" (form) cards were used in connection with the employment of Howard L. Johnson. The first card indicates Johnson was employed August 1, 1933, and the employment terminated August 15th; the stated "Reason For Termination" is, "Transferred to Permanent Position." The second card, identified as Claimant's Exhibit No. 4, discloses the filled-in statement of the name of Employee, Howard L. Johnson, residence Kansas City, Missouri; the Claimant's name is stated as the insurance beneficiary; a report of an examining physician is shown as of date August 17, 1933; the card indicates Johnson was employed as a gauger August 16, 1933, at K. C. T. Dept. OP2; the stated reason for employment is, "Additional Labor, to Comply with N. R. A. Code. See Req. 8/21/33." The exhibit bears Employee's signature, and shows "E. H. Skinner and Harry M. Moreland" signed the exhibit over the printed word "Approved." The secretary-treasurer of Employer testified the exhibit was "simply a payroll record that was made at the time the employee was employed." Skinner had signed the card at the general office on or after August 28, 1933.

Claimant-widow testified that her husband applied to Employer at the Bryant Building "for a job," and later received a letter from Employer. The letter said that his "application had been accepted and for him to apply over at their terminal on the Fairfax side to go to work." The letter had a "heading" bearing the name of Employer and showing Employer's general offices were in the Bryant Building in Kansas City, Missouri. "The best I can remember it (the letter) was signed by Mr. Skinner." Her husband went to work "the next day or right away" after receiving the letter. The letter "has been destroyed long ago. I didn't keep it." Employer and Insurer introduced evidence tending to prove Employer had never used "letterheads" bearing a Bryant Building address and, as stated infra, Skinner testified the general office did not employ field or operating employees, such as gaugers.

A witness, loader foreman of Employer in 1933 and a distant relative of Employee, testified Employee came to see witness at Employer's terminal (in Kansas). Employee "came to apply for work" and "called on me." The witness "referred him to Mr. Linch because I didn't do the hiring."

It was the testimony of Linch that he had authority to "employ men and put them to work" within his district. When Employee,

Howard L. Johnson, applied for a position, Linch examined the application (dated August 16, 1933), "talked to him about it, decided that he would be all right for the job and hired him" subject to physical examination. Witness filled out "Employment Rate Change Transfer" card, Claimant's Exhibit No. 4, and sent it to an examining physician. Upon return of the card by the physician, witness made a copy of the card and sent the original to the general office. Witness made no statement to Employee that the hiring "had to be approved by the general office or that he wouldn't be hired until he was approved by the vice-president." Names and employment cards of men who were hired were "submitted to the office in the Bryant Building to be approved by Mr. Skinner." If the vice-president disapproved Linch's act in hiring a person, the vice-president "would direct me he didn't want this man. He (the employee) would be paid for the time he worked and we would discharge him." Employees were told they were hired and they were put on the payroll before the records were sent to the general office. "If he (the employee) turns out unsatisfactory or they disapprove him then you terminate him."

Employer's vice-president, E. H. Skinner, testified that when an employee was but temporarily employed the employee's name, classification, rate, and tasks performed were shown on the time sheet kept in the district office. Temporary employees were paid by "pay order" of the district superintendent. When a man was transferred from temporary employment to permanent employment it was the practice to "terminate the employee" and issue a new card. That was what was done in Johnson's case. (Claimant's Exhibit No. 4, supra.) "We do not do any hiring in the office for field jobs." [463] When a gauger was employed on a permanent basis the district superintendent or the terminal superintendent interviewed the prospective employee. After the man was instructed to go to work, the permanent employment records were prepared and forwarded to the general office in the Bryant Building. The "cards after they were checked by my clerk were passed in to me for signature." Pay checks of permanent employees were issued from the general office. Employment was not contingent upon his, the vice-president's, approval. An employee might be paid for a time before the employment records reached the general office. "If he (an employee) has already been hired, there is only one thing I can do is to approve the employment record so he can be paid by the payroll department, and naturally if it should be somebody that I concluded should not be permanently employed, I would take whatever steps necessary to direct" that the district superintendent find replacement. "Yes, I would say that any man that is hired out in the field is subject to my approval." The approval by the vice-president is for payroll purposes. "Certainly you are not going to have any clerk . . . in your payroll

department paying people without there being some formal type of approval on your personnel records."

Considering the whole evidence, we believe the Commission was justified in finding the contract of employment was entered into in Kansas. It is not our purpose to substitute our judgment for that of Commission, but we here endeavor to determine whether Commission could have reasonably made its findings and reached its result upon consideration of all of the evidence before it. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S. W. 2d 647; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S. W. 2d 55; Scott v. Wheelock Bros., 357 Mo. 480, 209 S. W. 2d 149.

The evidence introduced tends to show Employer's lines passed through the states of Missouri and Kansas; that a terminal was situate at Kansas City, Kansas; that Employer's operations were divided into "field" or operational districts, one of which (Fairfax) was in charge of the district superintendent, Linch, and was located in Kansas; that operation employees such as gaugers worked—not in Missouri—in Kansas (and in other states). Employee never worked for Employer in Missouri. At least, it is reasonable to infer that the parties, in entering into contract of hiring, contemplated Employee's work should be done in Kansas. Employee began his work in Kansas after his interview with district superintendent, Linch, in Kansas. The employment as of date August 1st seems to have been of a temporary character as a laborer. Employee was "transferred" to permanent employment as a gauger, according to Employer's records, on August 16th, the date of his application for permanent employment. Employee drew his pay as a permanent employee from and including that day. There was evidence tending to show that Linch had actual authority to employ; that he did employ temporary and permanent personnel in the Fairfax district; and there is substantial ground for a reasonable inference that the "approval" of his acts in employing operating personnel for Fairfax district was but the supervisory and superintending action of Employer's executives insuring the continued employment of efficient personnel and the authenticating of Employer's payrolls.

Respondents, Employer and Insurer, urge there is reasonable basis for a finding that Employee was hired as of date August 1st; and that the "termination" and "transfer" of date August 16th was but a change in Employee's duties, an incident of the contract of employment, and did not create a new contract of employment. See Sims v. Truscon Steel Co., 343 Mo. 1216, 126 S. W. 2d 204. Whether the hiring was of August 1st or 16th, there was evidence tending to show, as stated, that Employee made application for employment to Linch in Kansas; that Linch told Employee (in Kansas) he was "hired"; and that Employee thereupon entered into the employment and worked for Employer in Kansas. If, as there was substantial

evidence tending to show, Linch had authority to employ and did accept Employee's application for employment in Kansas, the contract of hiring was then [464] and there complete, even though Employer's vice-president (and president) afterward "approved" the contract in Missouri. 17 C. J. S., Contracts, § 356, at page 814; and see Anschutz v. Phillips Petroleum Co., Mo. App., 142 S. W. 2d 110.

In the case of Daggett v. Kansas City Structural Steel Co., supra, cited by Claimant, Baxter had been authorized by an employer to offer Daggett employment; Daggett expressly accepted the offer *in Missouri*. The evidence does not show a mere negotiation of an agent for a first party in which negotiation it was reserved that a written contract should be signed, and returned by the second party to the agent "for final handling," as were the facts in Illinois Fuel Co. v. Mobile & O. R. Co., 319 Mo. 899, 8 S. W. 2d 834, cited by Claimant. The facts are not quite so strongly indicatory of an intention to contract in Kansas as were the facts in the case of Overcash v. Yellow Transit Co., supra, cited by Claimant, wherein the evidence showed an employee, resident of Missouri (when the contract of employment became complete), removed his residence to Kansas. And see the case of Adams v. Continental Life Ins. Co., supra, cited by Claimant, in which case, in determining whether a "new contract" of employment had been made in Missouri, this court considered the shown fact that an employee, after the time of the asserted "new contract," retained his residence in South Dakota. The facts of Employee's residence and continued residence in Missouri may be and are considered, but such facts do not, in themselves, compel a finding that the parties intended to contract in Missouri. Reexamine Overcash v. Yellow Transit Co., supra; Adams v. Continental Life Ins. Co., supra; and compare Deister v. Thompson, supra.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.