247 S.W.2d 623 (1952)
THACKER et al.
v.
MASSMAN CONST. CO.
No. 42884.
Supreme Court of Missouri, Division No. 1.
March 10, 1952.
Motion for Rehearing or to Transfer to Denied April 14, 1952.
*624 Franklin D. Glore, Kansas City, for appellants.
Roy W. Crimm and Walter A. Raymond, Kansas City, for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied April 14, 1952.
DALTON, Judge.
This is an appeal from a judgment of the circuit court reversing a final award of the Industrial Commission in favor of claimants and against the employer. The amount involved gives this court jurisdiction of the appeal. Section 3, Article 5, Constitution of Missouri 1945, V.A.M.S.
It was admitted that George W. Thacker was an employee of respondent and sustained an injury, on November 14, 1949, by accident arising out of and in the course of his employment in Wyandotte County, Kansas, resulting in his immediate death. Claimants-appellants are the widow and dependent children of the deceased.
Respondent was engaged in the making of certain improvements, referred to as the Armourdale project, on the west side of the Missouri River in Kansas. Considerable piling had to be driven. Respondent maintained an office near the project and employed a number of pile drivers. Maurice Kite was the superintendent in charge. Respondent was a major employer and selfinsurer operating under the Workmen's Compensation laws of both Missouri and Kansas and claimants, apparently as a matter of protection, filed claims for benefits under the laws of both states.
On the issue as to where the contract of employment was entered into, the Industrial Commission of Missouri found that, at the time of the accident, "said employee was working under a contract of employment made in this state." The sole issue presented on this appeal is whether the finding on that issue, which was the only contested issue in the case, "is unsupported by competent and substantial evidence upon the whole record," as the trial court held. Sections 536.140 and 287.490, RSMo 1949, V.A.M.S.; Art. 5, Sec. 22, Constitution of Missouri 1945; Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W.2d 530, 532.
Claimants' evidence tended to show (by the deposition of James A. Bruce) that a *625 day or two prior to October 11, 1949, Bruce appeared at respondent's office and Kite, respondent's foreman, hired him as a pile driving foreman of a new crew to be put on for the third shift. No time was fixed to begin work, it was to be within a day or two and Kite was to notify him. Kite asked him if he had a crew. Bruce said he thought he had a crew and would have them. Kite gave him two or three names, or told him to go in the office and get them, as he did. Bruce had previously hired his own crew when working for respondent. Bruce did not recall whether or not Thacker's name was among those received from Kite. Bruce testified: "I don't recall that he told me to go by there. I said I would." He also remembered saying to Kite, "Well, I know positively that if Thacker is not working I can get him." Bruce testified, "I told him I would go by and notify Thacker." On cross-examination, Bruce further testified: "Q. You don't know whether Thacker had been previously employed, or not? A. I know he wasn't. After I got hold of Mrs. Thacker, I knew he wasn't, because he went to the hall to straighten up his card that day, and Mrs. Thacker said she would tell him when he got back to be ready at midnight." Bruce said that he (Bruce) was hired as foreman the first time he saw Kite. Later (a day or two), Kite sent McKnight, one of respondent's employees, to tell him to start work at midnight on the 11th of October. On the morning of October 11th, Kite told Bruce to get ready and be ready to start work that night at midnight. Bruce then went to the Union Hall in Kansas City, Missouri, and told two men (one was Tillisch) "they could go to work over there" for respondent that night. He also went to Hardin to see two others, Meadows and McGraw, but did not get them. He then went to Hawthorne station and Courtney trying to get men for his crew. He went by Thacker's house in Harlem, Missouri, but no one was at home. On a second trip to Thacker's home he failed to find Thacker, but found Mrs. Thacker about 1:30 p. m. Bruce told Mrs. Thacker to tell her husband to come to work for Massman Construction Company at twelve o'clock midnight. Mrs. Thacker said she would see that he got the message and that he would be there.
When Bruce told Kite he had a crew, Bruce intended to get McGraw, Meadows, Thacker and the two men he got at the Union Hall in Kansas City. He hadn't yet talked to Thacker, but had worked with him before. When Bruce, Thacker and other crew members appeared at midnight to go to work, only the night watchman was at respondent's office. The other crew went off the job at midnight and Bruce put his men to work. At 4:30 a. m., October 12, the rig turned over, tore up. Kite came at 5:30 a. m., and the men were given six hours time for the night's work and sent home. Before Thacker left the job that morning, he asked Kite for a job as welder and Kite said he would let him him know. Thacker later worked for respondent as a welder. Workmen had to sign up on the job on the Kansas side. Bruce signed before he began work, but Thacker didn't. Thacker didn't sign that night because no one was at the office and because they were laid off as of six o'clock the next morning. Kite could approve or disapprove men that Bruce selected. Kite did not disapprove Thacker, he wasn't there to disapprove. Thacker, after that occasion, continued to work as a welder for respondent.
The testimony of Robert Tillisch tended to show the circumstances under which he went to work on the same job with Thacker. Shortly after lunch time on October 11th, Tillisch had a telephone call from the district counsel of the carpenters Local 61, who asked Tillisch to talk to Bruce on the telephone. Bruce said he was looking for a crew to go to work on the third shift for respondent and that he had Eddie Guth and was going by to try to get Thacker. Tillisch agreed to start that night or the next night at midnight and he did so. He signed no papers that night, but went to work and the "rig turned over right after 4:30." He didn't go back to work but reported at respondent's office later and was paid for the work he did.
Thacker's widow testified that Bruce came to her house on the afternoon of the *626 same day that Thacker went to work at midnight. Bruce asked for Thacker and said he wanted him "to go to work for him at Massman Construction Company that night at midnight," as a pile driver. Her husband had gone to the Union Hall to look for work. She told Bruce that he would come to work at midnight. Thacker returned home about 2 p. m. and said he had been "to the hall and went down to the Hawthorne station to look for a job." She told him that Bruce wanted him to go to work for Massman at twelve o'clock that night. Thacker said he would go, and did go to work that night. He came home about six o'clock the next morning and said the rig broke down. Later a man came for him to do some welding and he continued to work for respondent until his death. Thacker's union card was paid up at that time as she had paid his union dues. Mrs. Thacker said that her husband had not made an application to respondent for a job previous to that day, "because he wasn't away from the house long enough." She said she had not been at home between 11-12 o'clock that morning, but had been visiting across the street and did not see Bruce until afternoon.
Respondent-employer's evidence tended to show (Kite's testimony) that, on Monday afternoon before Thacker started to work at midnight on Tuesday night, Thacker came over to the Massman office in Kansas and made application to Kite, respondent's foreman, for employment as a pile driver. Kite told him that they planned to put on a third shift, that they didn't know when they would be able to put the shift on, since they had several things to be worked out, "and if he was interested, why, to go down and leave his name at the office with the clerk in the office, which he did." Kite told him to go down and put his name on the list and they would call him as soon as they started the third shift, "we'd call him when we were ready to put the third shift on." Kite directed the clerk to call Thacker on Tuesday, October 11, 1949, but the clerk could not reach him. In the afternoon Kite told Bruce to notify Thacker to come to work at midnight. Respondent had the names of three pile drivers on a list in the office, because respondent anticipated putting on the third shift. Thacker came to work at midnight. Kite saw him the next morning. Before Thacker left the job he asked for work as a welder. Kite said he would let him know if they needed him, and they did send to his home for him that day. Kite had the right to hire and fire employees. They were subject to his approval. When they came he might have to pay them for two hours and send them home. Merely leaving names with the clerk was not considered employing them, unless they were anticipating a third shift. Merely leaving their names was employment for the three men (including Thacker) who left their names with the clerk. Guth's name was not taken until Tuesday afternoon. Kite told the other men he would let them know when to come to work. Kite testified: "If they were going to work, they were bound to have been employed. * * * When I told that man to go down there he was employed, as far as I was concerned. I wasn't going to get another man to replace him. I was counting on him to go to work." They were employed at the time they left their names with the clerk. Kite said he told Thacker that they were "going to put that third shift on, and we were counting on him to go to work * * * I told him to put his name on the list. Q. In other words you told him that you would notify him, but you didn't employ him then? A. It depends upon what employ means."
The testimony of Edward L. Guth tended to show that he talked to Thacker at the Hawthorne power station in the northeast bottoms in Kansas City, Missouri, on the morning of October 11, 1949 between 10-12 a. m. and asked him whether he was looking for a job and Thacker said, "No, he had a job," but that "he had heard they were going to put on a third shift down at Massman and start that night." Thacker said Bruce was his foreman. He sent Guth to see Kite at respondent's office in Kansas City, Kansas. Guth went to respondent's office about 3 p. m. and asked for Kite. Kite called Bruce to see if he had a full *627 crew and Bruce said "hire him." Guth then signed up and went to work with Bruce and Thacker at midnight.
According to Harold Foster, respondent's office manager, Thacker came to see Kite about the Monday before the third shift started on Tuesday night. Kite sent Thacker in the office and Thacker gave Foster his name and address. On Tuesday, Kite talked to Bruce and Foster gave Bruce a list of three or four names for Bruce to contact and have the men there for the night shift that night. The men "had been hired, provided they started if and when they were ready to go to work." Thacker's name was on the list. Foster took Thacker's name and address because he had been hired by Kite. Thacker said "he was going to work on that shift and that is where he could be reached." Foster knew the shift would start that night or the next night and they aimed to use Thacker, but Foster did not tell Thacker.
Hollis Davis, respondent's timekeeper, signed Thacker up in the office the next morning when Thacker came back to the office, after he had gone to work for respondent at midnight the night before.
Except for Bruce, the witnesses appeared personally before a Referee, who found that "the contract of employment between the employer and the employee herein was entered into in the State of Kansas." Compensation was denied. On application for review, the Industrial Commission reversed the award of the Referee and made the final award in favor of claimants for a total of $12,150.00 finding, as stated, that the contract of employment was made in this state.
Appellants contend that the Commission's finding (that the contract of employment was entered into in this state) was "supported by competent and substantial evidence upon the whole record"; that the finding was conclusive and binding upon the trial court; and that the court erred in reversing the award of the Commission.
As the reviewing court, we may not substitute our own judgment on the evidence for that of the Industrial Commission, but we are authorized "to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62; Brown v. Weber Imp. & Auto Co., 357 Mo. 1, 206 S.W.2d 350, 352; Goetz v. J. D. Carson Co., supra. In determining these issues we first view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the whole record. Where the contract of employment was made was a fact issue for the Commission's consideration. Rendleman v. East Texas Motor Freight Lines, 355 Mo. 287, 196 S. W.2d 171, 174; Kelsall v. Riss & Co., Mo. App., 165 S.W.2d 329.
Respondent contends that claimants are not entitled to the benefit of the testimony of respondent's witnesses that deceased applied for employment in Kansas because such fact was contradictory of the personal testimony of claimants and their other witnesses. Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50(1); Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600, 603. Respondent refers to the testimony of Mrs. Thacker on behalf of herself and her children, as follows: "Q. Do you know whether or notcan you say whether he made application at Massman Construction Company for a job previous to that day? A. No, he didn't, because he wasn't away from the house long enough." This testimony shows on its face that it was the witness' conclusion and not a fact within her personal knowledge. Her other testimony shows that her husband was away from home seeking work at the Union Hall and at Hawthorne station; and that she had been away from her home visiting a neighbor. Reference is made to Bruce's testimony and to Tillisch's testimony that Bruce said *628 he was looking for a crew to go to work on the night shift and that he was going to try to get Thacker. Bruce never denied that he got Thacker's name from respondent's office, he couldn't remember, but he did say that Thacker's name was discussed with Kite and that he told Kite he would go by to see Thacker. Assuming without deciding that the rule contended for could be applied in a hearing before the Commission or a Referee, a careful reading of the record convinces us that the rule could have no application here where the issues on appeal have been limited by the constitutional and statutory provisions referred to.
Respondent further contends that the statements and conclusions of respondent's witnesses, Kite and Foster, as to the employment of Thacker in Kansas at the time he applied for work there, as brought on cross-examination without objection, are not without probative value as evidence. Doyle v. St. Louis Merchants' Bridge Terminal R. Co., 326 Mo. 425, 31 S.W.2d 1010, 1012; Montague v. Washington Fidelity Nat. Ins. Co., Mo.App., 72 S.W.2d 804, 805; Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665, 666. While such evidence appears in the record, it is apparent in view of the Commission's finding, that the Commission considered other evidence in the record in conflict therewith, and the inferences to be drawn from such evidence, to be of more weight and value than the statements and conclusions of these witnesses.
Respondent further contends that the overwhelming weight of the evidence establishes Kansas as the place where the contract of employment was made and that there is no substantial evidence to the contrary. Respondent's theory is that "the contract of employment was made in Kansas when Thacker was told he could go to work on the third shift, starting that night or the next and gave his name and telephone number to the clerk so he could be notified when to come to work"; and that "if Mr. Thacker was not employed in Kansas the day he applied there and was told they would call him when the shift started, he was not employed until he appeared on the Kansas job side for work when the shift started, and in either event his employment was a Kansas employment." Assuming without deciding that there is sufficient evidence in the record to support either of the suggested findings, if such findings had been made by the Commission, we are here concerned as to whether the finding, as made, was supported by competent and substantial evidence upon the whole record; and, thereafter, as to whether or not such finding is contrary to the overwhelming weight of the evidence.
There was competent and substantial evidence that Thacker made application for employment at respondent's office in Kansas on Monday afternoon, October 10, 1949. Kite knew him and had observed his work with the Central Engineering Company. Kite testified: "I told him that we planned to put on a third shift, and if he was interested, why, to go down and leave his name at the office with the clerk in the office, which he did. * * * I told him we didn't know when we were able to put the shift on, that we had to get several things worked out before we could put the third shift on." These statements do not show that a contract of employment was then and there entered into, nor do they show that any secret intention of Kite to employ him was communicated to Thacker. This testimony appears to be inconsistent with Kite's subsequent testimony. The work had started with one shift in July and a second shift had been put on in the latter part of August. A third shift was only contemplated. The Commission could reject the subsequent testimony of Kite that he would not have had Thacker leave his name with the clerk if he had not intended to use him; that he considered Thacker hired and a contract of employment entered into; and that he told Thacker he was wanted for the third shift and they were counting on him and they would call him as soon as the work started. Much of the subsequent testimony of Kite and the testimony of Foster could be rejected as evidencing the conclusions of the witnesses, and also in view of other testimony that tends to contradict it. Thacker's name was not put on the roll as an employee until *629 the morning after he went to work. On Tuesday, Thacker was continuing to seek employment. A foreman for the third shift had not been obtained until Bruce was hired. Thacker had been there and applied for work before Bruce was employed as foreman of the contemplated third shift. Thacker's name was discussed by Bruce with Kite. Guth's testimony that Thacker, on Tuesday morning, told him he had a job with respondent and was going to work at midnight conflicts with the testimony of Kite, Bruce and Mrs. Thacker, which tends to show that Kite did not send Bruce to notify Thacker until Tuesday; that Bruce did not leave word with Mrs. Thacker until Tuesday afternoon; and that Thacker did not know he was expected to go to work at midnight until about 2 p. m. Tuesday.
On the record presented the Commission could find that Thacker's application for employment, and the leaving of his name and address at respondent's office in Kansas, was a continuing offer to enter into a contract of employment with respondent on the terms and hours provided by the union contract; that there was no acceptance on respondent's part at the time; that there was no intention on the part of either respondent or Thacker to then and there enter into a contract of employment; and that no contract was then entered into. Respondent admits that the evidence shows the proposed employment "was a union job and the hours and pay" were fixed by a union contract.
The Commission could also infer and find from the evidence that Thacker authorized acceptance of his offer of employment by notice to him of such acceptance at his home address in Missouri. Any reasonable and usual mode of the communication of the acceptance could be adopted. 12 Am.Jur. 538, Contracts, Sec. 44; Am.Law Institute's Restatement of the Law of Contracts, Sec. 66; 17 C.J.S., Contracts, § 42, p. 380.
There was evidence that Thacker's name was on the list given to Bruce on Tuesday and that Kite sent Bruce to notify Thacker at his place of residence to come to work at midnight. While Bruce went to the office at Kite's direction and obtained several names, he did not remember the names he obtained, but he did remember telling Kite, "Well, I know positive that if Thacker is not working, I can get him." In answer to the question "Didn't Mr. Kite tell you to go by Thacker's." Bruce said, "I don't know if he did or not." This testimony was not in conflict with Kite's testimony. The Commission could find that Kite sent Bruce to notify Thacker that his offer to work for respondent was accepted and he should report for work that night. The Commission could find that Bruce carried the message to Thacker's residence, delivered it to Mrs. Thacker and authorized her to deliver the message to her husband. She did deliver it. On receipt of the message, Thacker considered it a completed contract of employment. He acted upon the notification as an acceptance of his offer of employment and reported for work. The Commission could find that the acceptance having been, by direction of the employer, communicated to Thacker at his residence a binding contract came into existence in Missouri, where the last act was performed to bring the contract into existence.
"It is elementary that in order to make a contract there must be, among other things, a meeting of the minds of the contracting parties regarding the same thing, at the same time." State ex rel. Equitable Life Assur. Soc. v. Robertson, Mo.Sup., 191 S.W. 989, 991. To make a contract there must be both a definite offer and an unequivocal acceptance. Cottonseed Delinting Corp. v. Roberts Bros., Mo. Sup., 218 S.W.2d 592, 593. Where an offer calls for a promise, as in this case, notice to Thacker of the acceptance on respondent's part was essential to the formation of a contract. Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S.W. 2d 1036, 1039; Cottonseed Delinting Co. v. Roberts Bros., supra. The employer's assent to the contract had to be brought home to the employee in order that the contract be consummated and the employee report for work under the contract. The acceptance had to be more than merely a mental state. An uncommunicated intention *630 to accept an offer is not an acceptance. Daggett v. Kansas City Structural Steel Co., supra, 334 Mo. 207, 65 S.W.2d 1036, 1039; Bernblum v. Travelers Ins. Co., 344 Mo. 217, 125 S.W.2d 844, 847; McClintock v. Skelly Oil Co., 232 Mo.App. 1204, 114 S.W.2d 181, 189.
Notice of respondent's acceptance of Thacker's offer to enter into a contract of employment with respondent could be given to Thacker by the authorization of Bruce to carry the message to Thacker in Missouri. In Thacker's absence Bruce, respondent's agent, could designate Mrs. Thacker as respondent's sub-agent to deliver the notice of respondent's acceptance to Thacker. Since Bruce was unable to personally deliver the message of acceptance, he had implied authority to accomplish the purpose of his mission by delivering the message to Mrs. Thacker and authorizing her to deliver it to her husband. Farm & Home Savings & Loan Ass'n v. Stubbs, 231 Mo.App. 87, 98 S.W.2d 320, 333; Meux v. Haller, 179 Mo.App. 466, 473, 162 S.W. 688; Hodkinson v. McNeal Machinery Co., 161 Mo.App. 87, 91, 142 S.W. 457; 2 Am.Jur. 156, Agency, Sec. 197; Am.Law Institute's Restatement of Law of Agency, Sec. 80.
The Commission could well find that Thacker's going to Kansas to begin work at midnight on October 11, 1949, was in response to the notice of respondent's acceptance of his application for employment, and because of the coming into existence of a completed contract of employment with respondent. Daggett v. Kansas City Structural Steel Co., supra, 334 Mo. 207, 65 S.W.2d 1036, 1039. The fact that the acceptance of an offer has been communicated to the offeror may be shown by the offeror's conduct. 12 Am. Jur. 538, Contracts, Sec. 44. The contract having been consummated in Missouri it was a Missouri contract. "It is settled law that the place where the final act occurs which makes a binding contract is the place of contract." Daggett v. Kansas City Structural Steel Co., supra, 65 S. W.2d 1036, 1039; Deister v. Thompson, 352 Mo. 871, 180 S.W.2d 15, 17; Johnson v. Great Lakes Pipe Line Co., 358 Mo. 445, 215 S.W.2d 460, 461; Am.Law Institute's Restatement of the Law of Contracts, Sec. 74.
On the record presented we hold that the finding of the Commission on the issue in question was supported by competent and substantial evidence upon the whole record; that the Commission could have reasonably made the finding, as made, and reached its result upon a consideration of all the evidence before it; that the finding in question is not clearly contrary to the overwhelming weight of the evidence; and that the trial court erred in reversing the award of the Commission.
The judgment is reversed and the award of the Industrial Commission is affirmed.
All concur.