Willard Leon DAVIDSON, Employee, Claimant, Appellant,

v.

SCULLIN STEEL COMPANY, Employer, and American Insurance Company, Insurer, Defendants-Respondents.

No. 32364.

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1966.

Douglas W. O'Neill, St. Louis, for claimant-appellant.

Emil J. Kohl, St. Louis, for defendants-respondents.

WOLFE, Presiding Judge.

This appeal concerns a claim filed with the Division of Workmen's Compensation of the Industrial Commission of Missouri. The claimant sought compensation for an injury he sustained while working as an employee of the Scullin Steel Company. The hearing on his claim before a referee of the Division of Workmen's Compensation resulted in an award to him of $47.50 a week for a period of 5⅔ weeks. The employee then made an application for a review by the full commission. Upon review the commission affirmed and adopted the referee's award. This was followed by an appeal to the circuit court which affirmed the award of the commission. The claimant then appealed to this court from the judgment of the circuit court affirming the award.

The claimant here contends that evidence does not support the award of the commission and that the testimony of one doctor was erroneously admitted.

The Scullin Steel Company has a scale in its scrap yard for weighing furnace cars loaded with scrap iron. The cars operate on rails and carry iron to the smelting furnace. The cars are weighed as they stand on tracks and the mechanism of the scale which weighs them is underground. It is located in a room below the tracks which is reached by an 8 foot ladder. On May 28, 1964, the claimant, who was a man 32 years of age, was down in this room making an adjustment on the scale. The scale arm was a solid steel bar 6½ feet long, 4 inches thick, and 8 inches wide. It was fastened at one end but the end on which the claimant was working fell as he had his arm under it and it "jerked" him "maybe eight or ten inches to the ground."

Claimant estimated the weight of the bar to be between 1,500 and 2,000 pounds. He testified: "It came down driving my right arm into my right side, jerking me all the way to the ground. It hurt my right leg, my right side. It hurt my back. I heard popping in the upper part of my back. I had smothering—I couldn't breathe. I had hurting in my chest, and also my left shoulder hurt." He was unable to get up the ladder without help and after reaching the ground level he went to the company dispensary. There he was X-rayed and given "pain pills," massage and heat treatment. He went back to work on May 31, but he did not work the following five days. He went back to work on the 6th and 7th of June and thereafter he did not return to work until July 2.

Claimant was treated at the company dispensary on 19 occasions and Dr. Suba, the company doctor, prescribed a rib brace which claimant wore for a short time. Claimant complained of blood in the urine and was sent to St. John's Hospital for examination. He first declined to enter the hospital but was finally persuaded to do so and he remained there from June 19 to June 25. At the request of Dr. Suba he was examined there by Dr. Brennan, a urologist specializing in genital urology. He was released on June 25 and lost a total of 37 days of work.

At the time of the hearing claimant testified that he had constant pain in his back and neck. He said the pain went up into his head and it got worse when he lifted. He described it as being like a toothache. He said when he lifts he feels like all the leaders and muscles of his back were torn out. He also stated that when he climbs stairs he gets smothering spells and blackouts and fainting spells. He said when he drinks liquids such as coffee, tea or milk he gets a sharp pain in his chest "just like you would stick a knife in there." Every time he goes to sleep he wakes up during the night with no feeling in either arm. Feeling comes back after 35 or 40 minutes in the right arm and approximately 45 or 50 minutes in the left arm after he wakens. He stated he still had blood in his urine and blood in his stool.

A Dr. Stephens testified on behalf of claimant and stated that he examined the claimant on July 14, 1964 and on November 30, 1964. Upon these examinations claimant complained of pain in his upper back between his shoulder blades. The doctor stated that claimant described the pain to be constant like an ache and at times sharp. He said that the claimant stated that the pain was aggravated by bending and he avoids heavy lifting. He also stated that the claimant had daily episodes of nausea and vomiting towards the evening but no complaints of abdominal pains. An examination of the claimant's back showed good alignment with no muscle spasms in the

paravertebral muscles but he had diffused tenderness about the paravertebral muscles in the mid-dorsal region. X-rays were negative and there was no objective symptom of any kind. Dr. Stephens drew the conclusion that the claimant's complaint regarding the dorsal region of his back were consistent with some soft tissue injury in that region and it was his opinion that the claimant was about 15% permanently disabled.

On cross-examination the doctor testified that he would diagnose the condition as a strain or sprain of the dorsal region, describing that as part of the back from the base of the neck to about three inches above the waistline. Upon cross-examination the doctor stated that the strain of the dorsal spine muscles would not be consistent with the claimant's complaint of sharp shooting pain in his chest when he drank liquids. He also stated that the claimant's smothering spells when he climbed steps were not consistent with his diagnosis of a sprained back nor did he find any connection with the diagnosis he had made with the claimant's statement that he lost circulation of blood in both of his arms at night while lying down. Dr. Stephens stated that it was not likely that one would find sharp pain like a toothache, which claimant stated he had in the back of his neck at all times, associated with the sprain which the doctor thought the claimant had. The doctor also conceded that there would be muscle spasms if the strain were severe enough to cause nausea or vomiting and he did not find muscle spasms in claimant's back at any time. He found no objective evidence of injury and the only evidence upon which he could base a diagnosis were claimant's subjective manifestations of pain and his complaints. He was asked upon redirect examination if there was any causal relation between the blood in the urine and the accident and the doctor testified that he was not qualified to answer that.

The report of Dr. Brennan who made a cystoscopic examination in the hospital was also offered in evidence by the claimant.

Dr. Brennan found no blood in the urine visible to the naked eye but microscopic examination disclosed some blood cells. In his report he stated: " * * * about all I can say is that this man apparently does have red cells in his urine and the only finding really is the veins in the bladder are engorged and whether this is the tail end of an inflammatory process or whether he strains real hard to urinate I don't know, but I don't think it's anything serious. * * *"

The claimant stated that he quit his work at Scullin because he could not do the work such as climbing and lifting. He had been working five hours a day at a second job at the Commercial Cartage Company where he did lubrication work and repaired tires but he quit that work following the injury because he could not do the lifting and could not do the washing of trucks which he testified had to be done with an 18 inch brush on an extension. After that he worked at a Shell Filling Station at the intersection of Union and Delmar Boulevards from October 10, 1964, to December 14, 1964.

The proprietor of the filling station testifying as a witness for the employer said that claimant's work at his station consisted of routine filling station work. He said that claimant did not ask for any time off because of any physical disability nor did he appear to be in any distress while performing his various duties or ever complain of pain. He stated that he discharged the claimant because he was incompetent, dirty and not capable of performing his duties.

The employer also called Dr. Suba, medical director, at the Scullin Steel Company plant. He had examined the claimant in the hospital but could find no visible evidence of any injury. He ordered some medication to relax his muscles but he did not institute any program of therapy for him because he did not think it was necessary. The last examination he made was November 27, 1964. He stated that at that time he could find no points of tenderness along the course of the cervical, thoracic and lumbar spine and there was no costovertebral angle tenderness. Dr. Suba testified that he was not at any time able to see blood in the urine. The claimant had never complained to him of blood in his stool. He stated that he saw no causal relationship between the accident and the hematuria that was present subsequent to that date. He testified that he did not think the claimant had any permanent partial disability.

It was upon the evidence above stated that the referee for the Division of Workmen's Compensation made his award for temporary total disability for a period of 37 days or 5⅔ weeks, concluding his award with the statement: "I further find from the evidence that there is not sufficient credible evidence to support a finding of permanent partial disability."

As stated, the full commission affirmed the award and the circuit court affirmed the commission. Our function as a reviewing court is fixed by the 1945 Constitution of Missouri, Art. 5, § 22, V.A.M.S. The pertinent part of the section states: " * * * such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647. The scope of our review was elaborated upon in Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 1. c. 12, wherein the court stated: "In determining whether the Commission could have reasonably made its findings, and reached the conclusion it did reach, upon consideration of all the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence are

contrary to the overwhelming weight of evidence in the whole record. Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627."

Under those rules we cannot disturb the findings of the commission based on an acceptance by it of one of two conflicting medical conclusions unless the conclusion accepted was against the overwhelming weight of the evidence. Cole v. Best Motor Lines, Mo.App., 303 S.W.2d 170; Tebeau v. Baden Equipment and Construction Co., Mo.App., 295 S.W.2d 184. The only objective evidence of any of the things of which claimant complains was a microscopic finding of the hematuria. This was never related to the accident by any medical witness. The claimant's own doctor found only subjective evidence of a back sprain and concluded that it had resulted in a 15% permanent disability to the man as a whole. The testimony of Dr. Suba was that there was no permanent disability and the commission believed Dr. Suba. We cannot say that they erred in so doing.

The claimant asserts that Dr. Suba's testimony is of no value and cannot be considered. He bases this assertion upon one answer given by Suba. Dr. Suba was asked his reason for his statement that there was no permanent partial disability and his answer was: "Because all the subjective complaints that this individual has are entirely out of proportion to our objective findings on physical examination, x-rays, fluoroscopy, and with a G.U. consultation, which is Doctor Brennan, who also concurs—"

At that point in the testimony counsel for claimant objected to the answer of Dr. Suba on the ground that Dr. Suba was basing his opinion on the opinion of Dr. Brennan. The referee struck that portion of the answer which related to Dr. Brennan's opinion. Claimant now asserts that Suba's conclusion is of no value as evidence. With this we cannot agree. Dr. Brennan's opinion which was put in evidence by the claimant related only to the hematuria. There was no medical evidence that this was causally connected with the accident nor that it related to the disability which claimant's doctor concluded was permanent. Suba had treated and repeatedly examined the claimant from the day of the accident. It was upon this that he formed his opinion regarding the strain from which claimant's physician stated that claimant was still suffering. We find the point without merit.

Judgment is affirmed.

ANDERSON and RUDDY, JJ., concur.