Mark **GARRITY**, Plaintiff–Appellant,

v.

**A.I. PROCESSORS**, Defendant–Respondent,

and

William **Orsinger**, Defendant.

No. 18299.

Missouri Court of Appeals, Southern District, Division One.

April 9, 1993.

**414**

Gene A. Hilton, Camdenton, for plaintiff-appellant.

W. Gary Drover, Camdenton, for defendant-respondent.

CROW, Presiding Judge.

Plaintiff, Mark Garrity, filed a three-count petition. Count I sought damages from "A.I. Processors"[1] ("AIP") for breach of contract. Count II sought damages from William Orsinger ("Orsinger") for allegedly inducing AIP to breach its contract with Plaintiff. Count III sought damages from Orsinger and AIP for allegedly conspiring with each other to deny Plaintiff the benefits of his contract with AIP.

AIP moved the trial court to dismiss Plaintiff's petition as to it, averring the petition alleged no facts authorizing a Missouri court to exercise jurisdiction over AIP. In support of its motion, AIP filed affidavits of three individuals. In response, Plaintiff filed his own affidavit, to which he attached copies of sundry documents.

The trial court, evidently treating AIP's motion as one for summary judgment, considered the affidavits and granted the motion. Although this left Plaintiff's claims against Orsinger unresolved, the trial court found there was no just reason for delay and entered judgment dismissing Plaintiff's claims against AIP. Rule 74.01(b).[2] Plaintiff appeals.[3]

Plaintiff, a resident of Illinois, is an "equipment broker."

Reduced to essentials, Count I of Plaintiff's petition avers: AIP, a Utah corporation, maintains a business office in Iowa; Orsinger does business in Sunrise Beach, Missouri; about March 31, 1989, AIP, through its agent Fred Peterson ("Peterson"), requested Plaintiff's assistance in finding a buyer for a "Blaw Knox Model No. 250 dryer" ("the dryer") owned by AIP, for $30,000 "net" to AIP; AIP agreed that if Plaintiff produced a buyer, AIP would sell the dryer to that buyer only through Plaintiff; Plaintiff found a buyer—Orsinger—willing and able to buy the dryer for $43,750; AIP thereafter entered into a contract with Orsinger at Sunrise Beach, Missouri, to sell the dryer directly to Orsinger; AIP and Orsinger consummated the sale, thereby costing Plaintiff $13,750.

Reduced to essentials, Count III of Plaintiff's petition (incorporating some allegations of Count II by reference) avers: Orsinger agreed to buy the dryer from Plaintiff; later, Orsinger learned AIP was the seller; Orsinger contacted AIP and offered to buy the dryer directly from AIP; Orsinger knew Plaintiff had promised AIP a deposit; Orsinger refused to send Plaintiff a deposit, intending to discredit him with

**1.** This entity filed a motion asserting it is a Utah corporation. However, the record contains an affidavit of its "corporate secretary" stating: "A.I. Processors is a fictitious name for Unilabco, a Utah corporation...."

**2.** Missouri Rules of Civil Procedure (1992).

**3.** An order dismissing a petition against a defendant for lack of in personam jurisdiction is a final, appealable order. *Bennett v. Rapid American Corp.,* 816 S.W.2d 677, 678[1] (Mo. banc 1991).

AIP; AIP and Orsinger conspired to deny Plaintiff the benefits of his contract with AIP by agreeing the dryer would be sold directly by AIP to Orsinger, without paying Plaintiff anything.

Plaintiff presents one point relied on; it reads:

> The trial court erred in sustaining the motion of [AIP] to dismiss for lack of jurisdiction because the court had jurisdiction of said defendant pursuant to the "long-arm statute," section 506.500 ... in that [AIP] did some of the acts enumerated in that section by entering into a contract within this state with ... Orsinger which act constituted a breach of its contract with Plaintiff, and by committing a tortious act within this state by conspiring with ... Orsinger to breach its contract with Plaintiff, which breach occurred in Missouri by the act of [AIP] entering into a contract with ... Orsinger.

Section 506.500, RSMo 1986, reads:

> 1. Any ... corporation, who ... through an agent does any of the acts enumerated in this section, thereby submits such ... corporation ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> ....
>
> (2) The making of any contract within this state;
>
> (3) The commission of a tortious act within this state;
>
> ....
>
> 3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Plaintiff's assignment of error makes it clear he does not contend *his* alleged contract with AIP was made in Missouri. He invokes subparagraph 2 of paragraph 1 of § 506.500—the "contract" provision—on the novel theory that (a) the contract between AIP and Orsinger was made in Missouri, and (b) Counts I and III plead claims against AIP "arising from" the AIP–Orsinger contract.

To learn how the dryer came to be sold by AIP to Orsinger, we examine the affidavits and documents presented to the trial court.

Charles R. Whiting ("Whiting"), an officer of AIP, made an affidavit stating the dryer was located in Iowa when the relevant events began. Whiting told Richard W. Page ("Page"), manager of an AIP plant in Iowa, to sell the dryer. According to Whiting, Peterson (mentioned earlier in this opinion) "was the exclusive agent for AIP in connection with ... all ... sales of equipment owned by AIP." Whiting agreed on behalf of AIP to pay Peterson a $4,000 commission based on a $30,000 sale price. On May 12, 1989, Whiting told Plaintiff by telephone that the dryer was for sale to anyone willing to pay $30,000.

Peterson made an affidavit stating his residence and office are in Wisconsin. He was told by Whiting and Page to sell the dryer, situated in Iowa. By telephone, Peterson informed Plaintiff about the dryer. On several occasions thereafter, Plaintiff told Peterson he (Plaintiff) was sending money to buy it; however, no money arrived. Eventually, Peterson told Plaintiff "to simply bring the money and purchase the [dryer] if he wanted to purchase it." Peterson had no contact with Plaintiff or anyone else in Missouri. All contact between Peterson and Plaintiff was by telephone between their offices in Wisconsin and Illinois, respectively. Peterson never talked to Orsinger.

Page made an affidavit paralleling those of Whiting and Peterson. Additionally, Page recounted that Plaintiff and Orsinger came to Iowa on May 1, 1989, to inspect the dryer. Page heard Orsinger say the dryer was not in the condition represented by Plaintiff. On a later date, Page told Peterson to tell Plaintiff and Orsinger that "the first party who came up with the purchase price" would own the dryer. The dryer did not leave Iowa until sold to Orsinger and the purchase price was received in full by AIP.

By a telephonically transmitted facsimile ("fax") April 26, 1989, Plaintiff, from his

Illinois office, sent Orsinger in Missouri an "invoice" for the dryer. Among other things, the invoice required a $7,000 down payment to be deposited in Peterson's trust account in a Wisconsin bank, and a $36,750 balance to be paid to Plaintiff "prior to shipment." A provision in the invoice read: "Title Remains with Seller until Invoice Paid in Full."

Another document before the trial court was a fax from Whiting to Orsinger dated May 11, 1989. It directed Orsinger to deposit the $30,000 "agreed upon purchase price" of the dryer in a specified account in a Utah bank. The document stated: "Sale is open until receipt of funds."

Another document before the trial court was a fax from Whiting to Orsinger showing the dryer sold to Orsinger. The document stated, *inter alia:*

> PLEASE NOTE: LOADING IS
> THE RESPONSIBILITY
> OF THE BUYER.
>
> RECEIVED WIRE TRANSFER OF AGREED UPON PRICE OF $30,000 ON 5/15/89. Equipment is marked *SOLD TO ORSINGER EQUIPMENT COMPANY* ON 5/15/89 by CHARLES R WHITING SECRETARY/TREASURER A.I. Processors. Paid in full. Equipment sold "AS IS/WHERE IS" … 5/15/89

In Plaintiff's affidavit, he avowed Whiting informed him that AIP had offered to sell the dryer to Orsinger and Orsinger had accepted. Plaintiff maintains Whiting knew of the promises to Plaintiff, as evidenced by the following passage in a fax from Whiting to Orsinger dated May 16, 1989:

> Fred Petersen [sic] told me that you were going around Mr. Garrity in order to expedite the sale and would give Garrity what was promised. I would not have sold you the equipment under any other basis. I would like to see this issue resolved before you actually take delivery.

Plaintiff begins his argument by asserting that inasmuch as Orsinger's acceptance of AIP's offer was in Missouri, the contract between those parties was made in Missouri. Plaintiff cites *Servco Equipment Co. v. C.M. Lingle Co.,* 487 S.W.2d 869 (Mo.App.1972). There, a Missouri company mailed plans and specifications for a refrigerator to a Texas company. In response, the Texas company mailed the Missouri company a "quotation" offering to supply the specified refrigerator for a stated price. Later, the Missouri company mailed the Texas company a purchase order "as per your quotation." The Texas company thereafter shipped the refrigerator. The Missouri company sued the Texas company in Missouri, alleging the refrigerator was defective. The Texas company argued Missouri had no jurisdiction under § 506.500 in that the contract was not made in Missouri.

The appellate court held:

> Generally speaking, the place of making a contract is where the offer is accepted. *Overcash v. Yellow Transit Company,* 352 Mo. 993, 180 S.W.2d 678[1] [ (1944) ]. Stated differently, the place of contract is where the final act occurs which makes a binding contract. *Daggett v. Kansas City Structural Steel Company,* 334 Mo. 207, 65 S.W.2d 1036 [ (1933) ]. The facts here provide all the requirements for a Missouri contract. [The Texas company's] offer by mail created in [the Missouri company] the power of acceptance by mail which when exercised formed the contract. Since the final act was acceptance by [the Missouri company] acting within the State of Missouri, a Missouri contract was created. Thereupon jurisdiction properly attached upon service of process under our long-arm statute.

487 S.W.2d at 870.

Plaintiff asserts the contract between AIP and Orsinger was made in Missouri in that (a) AIP's offer—the fax stating the price and identifying the Utah bank to which the funds should be sent—was received by Orsinger in Missouri, and (b) Orsinger transferred the funds by wire from Missouri to Utah, whereupon AIP acknowledged the dryer was sold to Orsinger. These facts, says Plaintiff, show Orsinger's acceptance was in Missouri, hence

a Missouri contract was created between Orsinger and AIP.

█ We disagree. As explained in *Servco*, 487 S.W.2d at 870, the place of making a contract is where the offer is accepted, i.e., where the offeree performs the act which, by the terms of the offer, constitutes acceptance. *Accord: State ex rel. River Corp. v. State Tax Commission*, 492 S.W.2d 821, 825[4] (Mo.1973), contract is made where the last act or acts necessary to make it effective are performed[4]; *Shady Valley Park & Pool, Inc. v. Dimmic*, 576 S.W.2d 579, 580[1] (Mo.App.1979), place where final act occurs which makes a binding contract is the place of contract.

From *Daggett* (cited in *Servco*), we learn:

[I]f an offer calls for the performance of an act, and further provides, either expressly or by necessary implication, that acceptance shall be made by performance of the act, then the acceptance must be in the manner indicated in the offer.

65 S.W.2d at 1039[2].

█ Here, the record indisputably demonstrates AIP's offer to sell the dryer to Orsinger provided that acceptance would be by performance of an act—depositing $30,000 in a particular account in a Utah bank. As we have seen, the May 11, 1989, fax from Whiting to Orsinger stated: "Sale is open until receipt of funds."

By depositing $30,000 in the appointed account in the Utah bank, Orsinger accepted AIP's offer to sell him the dryer. A unilateral contract was thereby created, requiring AIP to transfer ownership of the dryer to Orsinger and surrender possession of it to him at the site where it sat in Iowa. This is illustrated by *Garrett v. American Family Mutual Insurance Co.*, 520 S.W.2d 102, 111[3–4] (Mo.App.1974):

A unilateral contract, by its very nature, is one where only one of the parties makes a promise; and the consideration for such a promise is not another promise, but performance.... A unilateral

contract becomes enforceable upon performance, and the promisee is then entitled to his full bargain.

We hold the AIP–Orsinger contract was a unilateral contract made in Utah when Orsinger deposited $30,000 in the designated bank account. Because this contract was not made in Missouri, subparagraph 2 of paragraph 1 of § 506.500 does not apply. That being so, we need not decide whether one who is not a party to a Missouri contract may nonetheless utilize that provision to vest jurisdiction in a Missouri court where he sues one or more parties to the contract.

Plaintiff's other theory that Missouri has jurisdiction to adjudicate his claims against AIP is that the claims arise from the commission of a tortious act by AIP in Missouri, thereby conferring jurisdiction under subparagraph 3 of paragraph 1 of § 506.500.

In *Bennett*,[5] 816 S.W.2d 677, a trial court dismissed consolidated claims for bodily injury and wrongful death against a corporate defendant for lack of in personam jurisdiction. On appeal, the Supreme Court of Missouri held:

Plaintiffs must show that defendant committed a tort in Missouri, that the action caused the plaintiff's injury, § 506.500, RSMo 1986, and that defendant has sufficient purposeful minimal contacts with this state so that it "should reasonably anticipate being haled into court here," and thus avoid offending "traditional notions of fair play and substantial justice."

*Id.* at 678.

Four years earlier, the Supreme Court of Missouri decided *State ex rel. Ranni Assoc. v. Hartenbach*, 742 S.W.2d 134 (Mo. banc 1987). There, Missouri plaintiffs sued a New York corporation. It argued the Missouri court lacked personal jurisdiction over it. The Supreme Court said:

---

**4.** A holding in *River Corp.* on an unrelated point was overruled by *Intern. Travel Advisors, Inc. v. State Tax Commission*, 567 S.W.2d 650, 654–55 (Mo. banc 1978).

**5.** Footnote 3, *supra*.

Plaintiffs argue that Missouri courts can properly assert jurisdiction over [the New York corporation] because it committed a tortious act within the state, citing *State ex rel. Caine v. Richardson*, 600 S.W.2d 82 (Mo.App.1980). A single tortious act is sufficient to support personal jurisdiction consistent with due process standards. *Caine*, 600 S.W.2d at 84. Commission of a tortious act within this state includes extraterritorial acts of negligence producing actionable consequences in Missouri. *Caine*, 600 S.W.2d at 85. A party relying on a defendant's commission of a tort within this state to invoke long arm jurisdiction must make a prima facie showing of the validity of his claim. [*State ex rel. Deere and Co. v. Pinnell* ], 454 S.W.2d [889, 893 (Mo. banc 1970) ].

742 S.W.2d at 139[8–10].

An alert reader will perceive a difference between *Ranni* and *Bennett*. *Ranni* says the commission of a single tortious act in Missouri is sufficient to support personal jurisdiction over a nonresident defendant consistent with due process standards. *Bennett* says a plaintiff must show a nonresident defendant committed a tort in Missouri and that the defendant has sufficient purposeful minimum contacts with Missouri so it should reasonably anticipate being haled into court here, thus avoiding the offending of traditional notions of fair play and substantial justice.

■ The associating of individuals for the purpose of causing a breach of contract is an unlawful conspiracy; the action for such wrong sounds in tort. *State ex rel. Willman v. Marsh*, 720 S.W.2d 939, 940[1] (Mo. banc 1986). The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy resulting in damage to the plaintiff. *Royster v. Baker*, 365 S.W.2d 496, 499[3] (Mo.1963). The conspiracy is not itself actionable. Some wrongful act to the plaintiff's damage must have been done by one or more of the defendants, and the fact of a conspiracy merely bears on the liability of the various defendants as joint tort-feasors. *Id.* at 499–500[4].

■ Plaintiff's theory, as we understand it, is that (a) AIP and Orsinger conspired that AIP would breach its alleged contract with Plaintiff, (b) the conspiracy resulted in the AIP–Orsinger contract, (c) that contract was made in Missouri, and (d) the making of that contract was the act which breached the alleged contract between AIP and Plaintiff.

We have already held the AIP–Orsinger contract was not made in Missouri; consequently, element "(c)" of Plaintiff's theory fails.

Furthermore, the record shows Plaintiff suffered no damage in Missouri by reason of AIP's breach of its alleged contract with him. If AIP owed Plaintiff a fee for finding Orsinger to buy the dryer, it is clear Missouri was not where payment was due.

The most likely place where payment should have been made was Plaintiff's office in Illinois. Alternatively, had Plaintiff accompanied Orsinger to Iowa to pick up the dryer, it is arguable payment would have been due there. It might even be contended that Utah was the place where Plaintiff was wronged, as AIP should have sent payment to him from there. However, it is manifest there was no duty to pay Plaintiff in Missouri (indeed, there is no showing he was ever in Missouri), thus the wrongful act which damaged him (refusal to pay) did not occur in Missouri.

Because the AIP–Orsinger contract was not made in Missouri and the wrong which damaged Plaintiff (withholding payment) did not occur in Missouri, we hold the tort of conspiracy to cause breach of the alleged contract between AIP and Plaintiff was not committed in Missouri. Accordingly, subparagraph 3 of paragraph 1 of § 506.500 does not apply. That being so, we need not attempt to harmonize *Ranni*, 742 S.W.2d at 139, and *Bennett*, 816 S.W.2d at 678.

The judgment dismissing Plaintiff's claims against AIP is affirmed.

PARRISH, C.J., and SHRUM, J., concur.