# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2197

_____

James E. Stevens, individually,          *
                                         *
          Plaintiff-Appellant,           *
                                         *
Jami Lynn Stevens, a minor, by           *
next friend James E. Stevens,            *
                                         * Appeal from the United States
          Plaintiff,                     * District Court for the
                                         * Eastern District of Missouri.
     v.                                  *
                                         *
Rebecca J. Redwing; John S.              *
Redwing; Ricky E. Jones; C.              *
Curtis Holmes,                           *
                                         *
          Defendants-Appellees.          *
                                         *

_____

Submitted: September 8, 1997

Filed: May 29, 1998

_____

Before HANSEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

HANSEN, Circuit Judge.

James E. Stevens brought this diversity suit for money damages, alleging that the defendants committed several state law torts against him when Rebecca and John

Redwing obtained custody of his minor daughter, Jami Lynn Stevens. The district court[1] dismissed Stevens' complaint for lack of personal jurisdiction over the defendants. Stevens had filed an amended complaint adding a false imprisonment claim on Jami Lynn's behalf and a 42 U.S.C. § 1985 conspiracy claim. The district court dismissed the amended complaint as well, ruling that the added counts failed to state claims upon which relief could be granted. Stevens appeals, and we affirm.

## I.

James Stevens is currently serving a 200-year sentence of imprisonment with the Missouri Department of Corrections for a 1971 second degree murder conviction. While on parole, he married Sarah L. Sanders, and in April 1990, their daughter, Jami Lynn, was born. In December 1991, Stevens' wife died in an automobile accident. Stevens continued to have custody of his young daughter, Jami Lynn, until December 1992, when he was returned to prison on a parole violation and subsequent conviction. At that time, the child's maternal grandparents, the Sanders, began to care for Jami Lynn. In early 1993, Stevens consented to their appointment as guardians and conservators for his daughter. His formal consent filed with the probate division of the Circuit Court of Stone County, Missouri, recited that "I understand that I shall not have any right or claim to control or custody of such child . . . ." (Jt. App. at 136.)

In March 1993, the child's maternal aunt, Rebecca Redwing, came to Missouri from her home in Georgia and took Jami Lynn back to Georgia to live with her and her husband, John Redwing, with the consent of the guardians and conservators, the custodial grandparents, one of whom was then in ill health. The Redwings then sought permanent custody of Jami Lynn through the Georgia state juvenile court. The Sanders

---

[1]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, trying this case by consent of the parties pursuant to 28 U.S.C. § 636(c) (1994).

consented to a change of custody in the Georgia proceeding without the prior approval of the Missouri probate court. Stevens filed a motion to dismiss the Georgia custody proceedings with the Georgia court and removed the case to the United States District Court for the Middle District of Georgia. The federal court remanded the case back to the state court. On June 29, 1993, Judge George F. Nunn, Jr., Judge of the Superior Court of Houston County, Georgia, awarded the Redwings permanent custody of Jami Lynn. Stevens took an appeal of the permanent custody order to the Georgia Court of Appeals which dismissed it for procedural failures. His petition for certiorari to the Georgia Supreme Court was denied. The grandparents then petitioned the Missouri state probate court to terminate their guardianship of Jami Lynn due to their health problems. Stevens did not appear in person in the Missouri action (because he was incarcerated), but he did file numerous motions and written objections to the proceeding which the Missouri probate court overruled. (See Jt. App. at 216-18.) The Missouri probate court terminated the grandparents' guardianship of Jami Lynn on October 4, 1993, and relinquished jurisdiction of the child to the state of Georgia. Stevens filed a notice of appeal with the probate court, but that court apparently never processed the appeal.

In January 1995, the Redwings filed a petition in Georgia seeking to terminate Stevens' parental rights on grounds that he had sexually abused Jami Lynn. This termination action was pending when Stevens filed the suit now at bar. A previous petition to terminate Stevens' parental rights filed by the Redwings in Georgia had been dismissed because the court found that Stevens had insufficient contacts with Georgia to justify jurisdiction over him.

On March 3, 1995, Stevens filed the present suit in the United States District Court for the Eastern District of Missouri, seeking money damages for various torts. His complaint named as defendants Rebecca and John Redwing (the child's aunt and uncle who live in Georgia and who then (and now) had and have actual physical custody of Jami Lynn), Ricky E. Jones (their attorney in Georgia), and C. Curtis

-3-

Holmes (a psychologist in Georgia who concluded Jami Lynn had suffered sexual abuse).[2] Stevens' complaint attempts to set forth several state law torts allegedly committed by the defendants: conspiracy to interfere with his custody rights, conspiracy to interfere with a contract, conspiracy to harbor a child, conspiracy to alienate the affections of his daughter, defamation, malicious prosecution, and intentional infliction of emotional distress. The defendants moved the district court to dismiss the claims against them for lack of personal jurisdiction, asserting that there was no basis for personal jurisdiction under the Missouri long-arm statute and that they had no minimum contacts with the state of Missouri to satisfy traditional notions of justice and fair play. Stevens resisted the motion, asserting that the defendants had purposefully availed themselves of the benefits and protections of Missouri laws so as to be subject to the court's personal jurisdiction. On April 11, 1996, the district court granted the defendants' motion to dismiss Stevens' complaint for lack of personal jurisdiction and also dismissed Stevens' amended complaint for failure to state a claim upon which relief could be granted. Stevens timely filed this appeal.

Subsequently, on September 9, 1996, the Georgia juvenile court held an adjudicatory hearing on the Redwings' petition to terminate Stevens' parental rights. The Redwings offered the testimony of C. Curtis Holmes, the psychologist who had evaluated Jami Lynn and concluded that she had been sexually abused by her father. Stevens was personally represented by appointed counsel in the Georgia termination proceedings and testified via a telephone deposition. On October 17, 1996, the Georgia juvenile court found that Stevens had sexually abused his daughter, and the

---

[2]The complaint also named as a defendant George F. Nunn, the Superior Court Judge of Houston County, Georgia, who awarded permanent custody of Jami Lynn to the Redwings. The count against Judge Nunn alleged that he violated Stevens' civil rights by holding a hearing and granting the Redwings permanent custody of Jami Lynn without affording Stevens an opportunity to be heard. The district court dismissed this count, finding Judge Nunn is entitled to absolute immunity from suit. Stevens does not challenge this determination on appeal.

court terminated Stevens' parental rights. Stevens' court-appointed attorney took no appeal even though Stevens requested him to do so. The defendants have provided us with the certified record of the Georgia termination proceedings and have moved to dismiss this appeal as moot on the basis of the termination of Stevens' parental rights.

## II.

"The federal court in a diversity case must determine whether [the] defendant is subject to the court's jurisdiction under the state long-arm statute, and if so, whether exercise of that jurisdiction comports with due process." Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996). This two-part analysis requires us first to ask whether the activity of the defendant falls within the scope of the state statute. Portnoy v. Defiance, Inc., 951 F.2d 169, 171 (8th Cir. 1991). Second, we ask whether the assertion of jurisdiction violates federal due process by considering the defendant's minimum contacts with the forum: The suit must not "offend traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Jurisdiction must be based on the act or conduct set forth in the statute . . . and the cause of action must arise from the nonresident defendant's activities in Missouri." Moog World Trade Corp., 90 F.3d at 1384 (internal quotations omitted). To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists. Id.; Digi-Tel Holdings v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). We review de novo the issue of whether the plaintiff has presented a prima facie showing of personal jurisdiction, Digi-Tel Holdings, 89 F.3d at 522, and "we may affirm the district court's judgment on any basis supported by the record." Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 362 (8th Cir. 1997) (internal quotations omitted).

To determine whether the court has personal jurisdiction over the defendants, we first consider whether Stevens has made a prima facie showing that the claims made

in his suit fall within the scope of the Missouri long-arm statute. The Missouri long-arm statute provides in pertinent part that Missouri courts have personal jurisdiction over nonresidents who either make a contract within Missouri or commit a tortious act within Missouri. Mo. Rev. Stat. § 506.500.1 (1994). When considering whether personal jurisdiction exists under the long-arm statute, it is permissible to consider matters outside the pleadings. "[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire, by affidavits or otherwise, into the facts as they exist." Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) (internal citations omitted), overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949). It is clear from the affidavits and other record evidence in this case that Stevens' causes of action do not fall within the state long-arm statute.

Stevens' first cause of action alleges a conspiracy to interfere with his custody of Jami Lynn. In Missouri, interference with custody may only be asserted by one who has custody rights. See Politte v. Politte, 727 S.W.2d 198, 199-200 (Mo. Ct. App. 1987). At the time Jami Lynn was transported from Missouri to Georgia by the defendant Rebecca Redwing and at all times thereafter, to and including the present, Stevens had no right to the control or custody of Jami Lynn with which the defendants could interfere. He was not her custodial parent. As noted above, he had consented to the appointment of the grandparents Sanders as Jami Lynn's guardians and conservators and acknowledged that he no longer had "any right or claim to control or custody of such child" and that he understood "that the appointment is permanent and will not be set aside merely at my request." (Jt. App. at 136.) Section 475.120.1 of the Missouri Revised Statutes (Supp. 1997) provides that "[t]he guardian of the person of a minor shall be entitled to the custody and control of the ward . . . ." In sum, Stevens voluntarily surrendered physical custody of Jami Lynn to her grandparents when he was returned to prison for his voluntary criminal conduct which both violated his parole and earned him an additional weapons conviction. He voluntarily surrendered his legal custody rights by consenting to the appointment of the grandparents Sanders as her guardians. This claim is not within the scope of the long-arm statute because Stevens had no custody right in Missouri with which any of the defendants could interfere. The most he had was a right to petition the Missouri probate court to terminate its guardianship and to restore his right to custody. See Mo. Rev. Stat. § 475.083.4 (1994). While he made sincere efforts to do so when the Sanders petitioned the Missouri probate court to terminate the Missouri guardianship and conservatorship, these defendants cannot be held responsible for any error the Missouri probate court may have committed in disposing of Stevens' various motions and his attempted appeal of the order terminating the guardianship.

Stevens' complaint also alleges that the defendants conspired to alienate the affections of his child; however, the claim of alienation of the affections of a child is not a recognized tort in Missouri. <u>See</u> <u>Hester v. Barnett</u>, 723 S.W.2d 544, 555-56 (Mo. Ct. App. 1987). Likewise, Stevens' claim of intentional infliction of emotional harm is not a tort in this context. An "action for intentional infliction of emotional distress cannot be maintained where the underlying claim for alienation of affection is not actionable and the emotional distress is the alleged consequence of the same acts which caused the child[] to separate from the parent." <u>R.J. v. S.L.J.</u>, 810 S.W.2d 608, 609 (Mo. Ct. App. 1991). Stevens alleges the defendants conspired to harbor his child, but even assuming this is a valid tort in Missouri, it may only be brought by a custodial parent, which Stevens is not. <u>See</u> <u>Kipper v. Vokolek</u>, 546 S.W.2d 521, 525-26 (Mo. Ct. App. 1977); <u>see also</u> <u>Meikle v. Van Biber</u>, 745 S.W.2d 714, 716-17 (Mo. Ct. App. 1987). Because none of these activities allegedly engaged in by the defendants is a tort in Missouri, or if so, one which Stevens can assert, it follows that the Missouri long-arm statute is just not applicable to the defendants on these claims.

Another of Stevens' allegations is that the defendants conspired to interfere with an alleged contract between him and Jami Lynn's grandparents, the Sanders, concerning the care and custody of Jami Lynn. Paragraphs 39 and 43 of the amended complaint allege that between December 26 and December 31, 1992, Stevens asked the Sanders

to act as care-givers to Jami Lynn while he was incarcerated and that they agreed to do so, including an agreement by them to return physical possession of Jami Lynn to Stevens upon his release from confinement. Stevens alleges that as consideration for the agreement he gave the Sanders his household furniture, household appliances, power tools, and assorted other items. Stevens further alleges that he executed a power of attorney in the Sanders' favor in order to empower them to care for Jami Lynn. He claims that the defendants' actions interfered with his alleged contract and caused the Sanders to breach the contract he says he had with them. Stevens further alleges in paragraph 56 that but for the acts of the defendants in pursuit of their conspiracy the contract between him and the Sanders would have been performed and not breached by the Sanders. There are affidavits from the Sanders (Jt. App. at 30-33) which deny the existence of any such contract.

In Missouri, "[t]he associating of individuals for the purpose of causing a breach of contract is an unlawful conspiracy; the action for such a wrong sounds in tort." Garrity v. A.I. Processors, 850 S.W.2d 413, 418 (Mo. Ct. App. 1993). The conspiracy itself is not actionable. Some wrongful act to the plaintiff's damage must have been done by one or more of the defendants, and the fact of a conspiracy merely bears on the liability of the various defendants as joint tortfeasors. Id. (citing Royster v. Baker, 365 S.W.2d 496, 499 (Mo. 1963)).

The fundamental flaw in Stevens' contract claim is that the subsequently created state court guardianship and conservatorship for Jami Lynn, done at Stevens' request (see paragraph 44 of the complaint), made the performance by the Sanders of the alleged contract legally impossible. They no longer had the voluntary ability to return custody of Jami Lynn to Stevens, and Stevens' acknowledgment that he no longer had "any right or claim to control or custody" of Jami Lynn during the guardianship proceedings says as much. We believe that Stevens, having asked and consented to placing the grandparents in a position where they could not freely perform the alleged

-8-

contract, has no standing to assert that others later interfered with the contract or caused the grandparents to breach it.

Stevens' complaint set forth three counts of defamation based on allegations that some of the defendants made defamatory statements to the effect that Stevens had sexually abused Jami Lynn. In the Georgia termination proceedings where Stevens appeared, the court specifically found that Stevens had sexually abused his daughter. Because the Georgia court found these statements to be true, no tort of defamation occurred. Truth is an absolute defense to defamation, Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo. 1996) (en banc), and we must give full faith and credit to state court judgments. See Lommen v. City of East Grand Forks, 97 F.3d 272, 274 (8th Cir. 1996). Stevens makes two arguments against the validity of the Georgia termination decree. First, he claims that he had insufficient minimum contacts with Georgia to support its jurisdiction over him. The Georgia trial court ruled against him, pointing out that Stevens had availed himself of the Georgia courts by appealing the prior custody proceedings to the Georgia Court of Appeals, and by trying to remove the custody case to the federal court in Georgia. Stevens' second argument is that the Georgia termination court had no jurisdiction over Jami Lynn because she was present in Georgia only because she had been unlawfully removed from the jurisdiction of the Missouri probate court. The record, however, establishes that by the time the second termination proceedings were begun in Georgia, the Missouri probate court had terminated the Missouri guardianship proceedings after specifically finding by clear and convincing evidence that jurisdiction over Jami Lynn should be relinquished to the Georgia courts because it was in Jami Lynn's best interests to do so. (Jt. App. at 217.) Accordingly, we do not believe either of Stevens' arguments prevents the Georgia decree from being awarded full faith and credit. Further, we respectfully decline to serve as a surrogate for a Georgia state appellate court with respect to the termination judgment. Stevens has not made a prima facie showing that any alleged defamation

-9-

occurred in Missouri since the alleged defamatory statements asserted in his complaint have been judicially found to be true by the Georgia court.

Stevens' claim of malicious prosecution likewise fails to allege a tort in Missouri. In an action for malicious prosecution, a plaintiff must plead and prove, among other things, that the proceedings terminated in the plaintiff's favor. See Bramon v. U-Haul, Inc., 945 S.W.2d 676, 684 (Mo. Ct. App. 1997). Stevens' malicious prosecution claim rests on three Georgia proceedings brought by the Redwings against him. The first proceeding was a petition for termination of parental rights filed in July 1993, which the Redwings dismissed without prejudice in November 1993, after they had brought an adoption petition. The second was the adoption petition filed in October 1993, seeking to adopt Jami Lynn, which was dismissed without prejudice by the Redwings in February 1994. The third was a petition for termination of Stevens' parental rights which was filed in April 1994. It was terminated on the basis that the Georgia court had no personal jurisdiction over Stevens and specifically provided that the merits of the case were not reached. The Redwings later refiled for termination of Stevens' parental rights and the Georgia court, over Stevens' renewed jurisdictional objections, found it had personal jurisdiction and terminated his parental rights. It is clear to us that Stevens cannot allege that the Georgia proceedings to terminate his parental rights ended in his favor. In Missouri, a dismissal without prejudice constitutes a termination in favor of the defendant for the purposes of a subsequent malicious prosecution suit by him only where the party who initiated the case manifests an intent to abandon it. Absent such a showing, a dismissal without prejudice does not constitute a termination of the case in favor of the defendant. Shinn v. Bank of Crocker, 803 S.W.2d 621, 626 (Mo. Ct. App. 1990) (collecting and discussing Missouri cases). Here the record clearly shows that the Redwings did not abandon their efforts to terminate Stevens' parental rights after the dismissals without prejudice, and that both the custody and termination proceedings actually ended adverse to Stevens' interests.

In his argument on appeal, Stevens' court-appointed attorney characterizes Stevens' claims much differently than does Stevens' complaint. His attorney argued that two fundamental constitutional rights are at issue -- the ability to be a parent and meaningful access to the courts. The original complaint, however, does not state either of these claims and does not name any state actors as defendants aside from Judge Nunn, whose dismissal from this suit Stevens does not contest. After considering the nature of the claims stated in his complaint, we conclude, as did the district court, that Stevens failed to make a prima facie showing that personal jurisdiction over any of the defendants exists under the Missouri long-arm statute. We also conclude that the district court was correct in dismissing the two counts added in the amended complaint for the reasons expressed in the district court's memorandum opinion.

Stevens argues that it was improper for the district court to consider the nature of his claims, and that by considering matters outside the pleadings, the district court in effect improperly converted the defendants' motion to dismiss for lack of personal jurisdiction into a motion for summary judgment. We disagree. As shown above, it was necessary for the district court to consider first whether Stevens' claims fall within the ambit of the Missouri long-arm statute in order to determine whether personal jurisdiction exists over the nonresident defendants. Moreover, it was proper for the district court to consider matters outside the pleadings to determine the jurisdictional facts. See Land, 330 U.S. at 735 n.4.

Stevens also contends that the district court abused its discretion by denying his motion for appointment of counsel. We review the district court's denial of Stevens' request for appointment of counsel for an abuse of discretion. Williams v. Groose, 979 F.2d 1335, 1337 (8th Cir. 1992). A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case. See Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985). When determining whether to appoint counsel for an indigent civil litigant, the district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting

testimony, and the ability of the indigent to present his claim. <u>See</u> <u>Johnson v. Williams</u>, 788 F.2d 1319, 1322-23 (8th Cir. 1986). In this case, the district court denied appointment of counsel, concluding that neither the facts nor the claims are complex. Stevens' damages claims are straightforward and he adequately presented the facts of his claims, though they are insufficient to come within the scope of the state long-arm statute. We conclude that the district court did not abuse its discretion by denying Stevens' request for appointment of counsel in that court.

Because Stevens failed to present a prima facie showing that his claims against the defendants are within the scope of the Missouri long-arm statute, there was and is no personal jurisdiction over the defendants for a federal court sitting in Missouri to exercise. Consequently, we may not need to address the question of whether any of the defendants had the requisite minimum contacts with Missouri under the Due Process Clause to justify their being haled into court in Missouri. However, in the interest of completeness, we note that with the exception of Rebecca Redwing's trip into Missouri to transport Jami Lynn to Georgia and Rebecca Redwing's later appearance by counsel in the Missouri probate proceedings terminating the grandparents' Missouri guardianship and conservatorship of Jami Lynn, not one of the other defendants had or has the requisite minimum contacts with Missouri "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>International Shoe Co.</u>, 326 U.S. at 316 (internal quotations and citations omitted). As noted earlier, defendant Ricky E. Jones is the Georgia lawyer who represented the Redwings in the Georgia litigation, and the defendant C. Curtis Holmes is the psychologist in Georgia who examined and evaluated Jami Lynn and who testified in the Georgia proceedings that in his professional opinion, she had been sexually abused by her father. John S. Redwing is the spouse of Rebecca Redwing. Based on the record, neither Mr. Jones, Dr. Holmes, or Mr. Redwing have by any of their acts "'purposely avail[ed] [themselves] of the privilege of conducting activities within [Missouri], thus invoking the benefits and protections of its laws.'" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Hanson v. Denckla</u>, 357 U.S.

235, 253 (1958)); see also Minnesota Mining & Mfg. v. Nippon Carbide Indus., 63 F.3d 694, 697 (8th Cir. 1995), cert. denied, 516 U.S. 1184 (1996). Consequently, the district court's dismissal of Stevens' complaint as against those defendants was entirely correct.

Because we have addressed the merits of the appeal, we deny the defendants' mootness-based motion to dismiss it.

### III.

We have considered all of Stevens' claims of error and find them to be without merit. We express our sincere appreciation to Stevens' court-appointed appellate counsel for providing able, competent, and zealous representation in this appeal.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.